THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :
                                   :
         v.                        :    3:21-CR-353
                                   :    (JUDGE MARIANI)
JOHN VINCENT WATSON,               :
                                   :
         Defendant.                :

## MEMORANDUM OPINION

### I. INTRODUCTION

Defendant John Vincent Watson's Motion for Hearing/New Trial Under Federal Rule

of Criminal Procedure 33 (Doc. 163) is pending before the Court. With the Motion,

Defendant requests a hearing to explore the conduct of Detective Timothy Minnick who

testified at Defendant's November 2023 trial regarding the chain of custody of evidence,

including Defendant's cell phone and hard drive, who was later arrested on charges related

to his handling of evidence in other cases. (*Id.* ¶¶ 2-7; Doc. 163-1.) The Government

responds that a hearing is not necessary because the Motion is capable of resolution on the

existing record due to the limited nature of Minnick's testimony, the fact that his alleged

criminal conduct is not material to any issue in this case, and "the wealth of other evidence

introduced at trial—including Watson's admission to every element of the charges against

him." (Doc. 169 at 12.) For the reasons discussed below, the Court will deny Defendant's

Motion.

## II. BACKGROUND

On November 29, 2023, a jury convicted Defendant of the five counts of Sexual

Exploitation of Children in violation of 18 U.S.C. § 2251(a) charged in the November 9,

2021, Indictment (Doc. 1). (Doc. 107.) The Government provides an appropriate summary

of relevant evidence and testimony presented at trial. (Doc. 169 at 2-4.) Because Defendant

did not file a reply brief, he has not lodged any objection to the Government's summary.

Therefore, the Court includes the Government's recitation here.

> Over the course of two days in October 2021, Watson repeatedly sexually assaulted a 14-year-old victim in a hotel room, during which time he took four videos and a photograph on his phone. Watson appears in these videos giving sexually explicit commands to the highly intoxicated victim. After two days, the victim was eventually able to call law enforcement, who responded to the scene and arrested Watson soon after.

> During trial, several law enforcement officers testified as to the chain of custody of Watson's phone. Kingston Police Department Sergeant Sam Blaski testified regarding the search for and arrest of Watson. (Doc. 131 at 117-24.) Plains Township Police Department Chief Dale Binker discussed the seizure of Watson's phone after his arrest. (Doc. 131 at 104-11.) Pennsylvania State Police (PSP) Corporal Chris Hill of the Computer Crime Lab described the extraction of information from that phone. (Doc. 131 at 141-64.) Plains Township Police Department Detective Dan Lewis explained how he obtained a hard drive of the phone's contents from PSP Corporal Hill and reviewed those contents. (Doc. 132 at 3-25.) Plains Township Police Department Detective Timothy Minnick testified that, after the extraction, he logged the phone into evidence for Detective Lewis but never physically possessed the phone himself. (Doc. 131 at 127-136.)

> Although Watson raised arguments at trial related to the custody of his phone, Watson took the stand himself and testified that the phone was his. (Doc. 132 at 52.) He also testified that he had sex with the minor victim and used his phone to film it. (Doc. 132 at 54, 57). The jury convicted Watson of all

five counts of producing child pornography after deliberating for less than an hour. Watson has not yet been sentenced.

In April 2024, months after Watson's conviction, Detective Minnick was found disoriented in public and admitted to smoking crack cocaine. Declaration of AUSA Jenny Roberts ("Roberts Decl."), Ex. A. The United States Attorney's office learned of Minnick's conduct at that time and not before. Roberts Decl. ¶ 3. In August 2024, Minnick was charged with stealing drug evidence from other, unrelated cases for his own personal use. Roberts Decl., Ex. B. The details of Minnick's conduct are outlined in the criminal complaint filed in state court. *Id.*

(Doc. 169 at 2-4.)

### III. STANDARD OF REVIEW

A defendant may move for a new trial pursuant to Federal Rule of Criminal

Procedure 33 which provides in pertinent part that "[u]pon the defendant's motion, the court

may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R.

Crim. P. 33(a). The defendant "bears the burden of persuading the trial court that the

interest of justice requires the grant of a new trial." *United States v. Ray*, Crim. No. 1:12-CR-

58, 2016 WL 5787345, at \*3 (M.D. Pa. Oct. 4, 2016) (quoting *United States v. Hammer*, 25

F. Supp. 2d 518, 534 (M.D. Pa. 1998)) (citing *United States v. Amirnazmi*, 648 F. Supp. 2d

718, 719 (E.D. Pa. 2009)).

> "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir. 2002). However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* (citation and quotation marks omitted). . . . Such motions are not favored and should be "granted sparingly and only in exceptional

3

cases." *Gov't of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted).

*United States v. Silveus,* 542 F.3d 993, 1004-1005 (3d Cir. 2008).

The Third Circuit has consistently held that a defendant must meet five requirements

before he may be granted a new trial based on newly discovered evidence:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the [defendant]; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir. 1976) (internal quotation omitted);

*United States v. Kelly,* 539 F.3d 172, 181-82 (3d Cir. 2008) (quoting *Iannelli,* 528 F.2d at

1292). *Kelly* added that "[i]f just one of the requirements is not satisfied, a defendant's Rule

33 motion must fail." 530 F.3d at 182 (citing *United States v. Jasin,* 280 F.3d 355, 365 (3d

Cir.2002)). The movant has a "heavy burden of proving each of these requirements." *United*

*States v. Cimera,* 459 F.3d 452, 458 (3d Cir. 2006).

When the newly discovered evidence supporting a claim for a new trial under Rule

33 "could be categorized as impeachment in character," evidence that is *merely* impeaching

is unlikely to reveal that there has been a miscarriage of justice. *United States v. Quiles,*

618 F.3d 383, 391-92 (3d Cir. 2010).

> There must be something more, i.e. a factual link between the heart of the witness's testimony at trial and the new evidence. This link must suggest directly that the defendant was convicted wrongly. *See [United States v. Saada,* 212 F.3d 210, 216 (3d Cir 2000)] (describing this link as a necessary

4

"exculpatory connection"). When this connection is not present, then the new evidence is merely impeaching and its revelation does not warrant granting a new trial.

When asked to grant a new trial solely on the basis of new impeachment evidence, a court carefully should examine whether the defendant has demonstrated the necessary exculpatory connection between the evidence and the offense or has demonstrated that the newly discovered evidence totally undermined critical inculpatory evidence. . . .

. . . .

. . . [W]e have described . . . what we believe was the correct question: was there a strong exculpatory connection between the newly discovered evidence and the facts that were presented at trial or did the newly discovered evidence strongly demonstrate that critical evidence at the trial against the defendant was very likely to have been false?

*Quiles*, 618 F.3d at 392-93. *Quiles* identified relevant considerations to include whether the newly discovered impeaching evidence "could render the witness' testimony totally incredible" or whether the evidence shows that a "key witness was untruthful in closely related matters." *Id.* at 391-92 (internal quotations and citations omitted).

A hearing need not be held on every motion for a new trial. *United States v. Herman*, 614 F.2d 369, 372 (3d Cir. 1980 (citing *United States v. Iannelli*, 528 F.2d 1290, 1294 (3d Cir. 1976)). A hearing is only required in "exceptional circumstances." *United States v. Bergrin*, Civ. No. 20-2828, 2022 WL 1024624, at *7 (3d Cir. Apr. 6, 2022) (quoting *United States v. Glinn*, 965 F.3d 940, 942 (8th Cir. 2020)). Important considerations are whether a record on relevant questions had been developed at trial and whether the judge on the new trial motion also presided at the trial. *Herman*, 614 F.2d at 372.

## IV. ANALYSIS

Defendant's pending Motion is unusual in that he does not put forth an argument in support of his request for a new trial pursuant to Federal Rule of Criminal Procedure 33 but rather requests that the Court hold a hearing "to establish whether or not any malfeasance occurred in this matter, and, if so, to what extent and whether or not a new Trial under Rule 33 is proper." (Doc. 163 ¶ 7.) The "malfeasance" at issue is the conduct of Detective Timothy Minnick who testified at Defendant's November 2023 trial regarding the chain of custody of evidence, including Defendant's cell phone and hard drive, and who was later arrested on charges related to his handling of evidence in other cases. (*Id.* ¶¶ 2-3; Doc. 163-1.) Defendant specifically states the following:

> Detective Minnick's criminal charges, specifically Obstruction of Justice and Tampering with Evidence, amounts to the discovery of new evidence and arouses the Defendant's concern that Detective Minnick's handling of the evidence and subsequent testimony may amount to a violation of the Defendant's Constitutional Rights under *Brady*. 373 U.S. 83.

> At this time, the extent of Detective Minnick's alleged malfeasance, and whether said malfeasance occurred in this matter, is unknown to the Defendant.

(Doc. 163 ¶¶ 5-6.)

The question asked in Defendant's supporting brief is whether "this Court [should] hold a hearing to determine if the newly discovered evidence impacted this matter, and if so, to what degree." (Doc. 164 at 2.) In support of his suggested answer in the affirmative, Defendant points to the Government's disclosure obligations under *Brady v. Maryland*, 373

U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *United States v. Hill*, 967 F.2d 132 (3d Cir. 1992), positing that Minnick's malfeasance may rise to the level of a *Brady* violation in addition to calling his credibility into question. (Doc. 164 at 4-5.) Concerning Rule 33's requirements related to newly discovered evidence, Defendant states that "a proper legal analysis would be premature at this stage." (*Id.* at 6.)

The Government responds that Defendant's Motion can be denied on several grounds. First, the Government asserts that the newly discovered evidence is merely impeaching and does not satisfy the *Quiles* required link between the witness's testimony and the new evidence that suggests Defendant was wrongly convicted. (Doc. 169 at 8.) Second, the Government maintains that the newly discovered evidence is immaterial and would not produce an acquittal. (*Id.* at 9.) Third, the Government contends that a hearing is not required in the circumstances presented here. (*Id.* at 12.)

The Court agrees that evidence of Minnick's malfeasance is merely impeaching. (*See* Doc. 169 at 8.) Evidence of malfeasance stems from an investigation that began in April 2024 after an incident occurred in which Minnick and his wife revealed his drug use to Luzerne County District Attorney's Office detectives and Luzerne County law enforcement personnel. (Doc. 169-2 at 1-3; *see also* Doc. 164-1, James Halpin, *Drug Cop Charged With "Skimming" Evidence*, The Times-Tribune, Aug. 17, 2024, at A9.) The drug involved was crack cocaine which he "skimmed" from drugs seized. (*Id.*)

Minnick's testimony in this case related to the chain of custody of Defendant's phone and hard drive. (Nov. 28, 2023, Trial Transcript ("T. Tr. 1") 129:18-130:13, Doc. 131.) Minnick testified that, in his role as Evidence Technician, he did not physically handle this evidence but logged it into evidence for Detective Daniel Lewis who physically maintained custody of it. (*See, e.g.*, T. Tr. 1 129:1-9, 131:6-132:2, 135:18-22.) Detective Lewis essentially agreed with Minnick's characterization of Minnick's role in this case. (T. Tr. 2 10:8-12:4, 26:23-27:15.) Thus, testimony showed that Minnick had no direct access to the evidence at issue and there is no suggestion that Minnick tampered with evidence in this case as opposed to his skimming of crack cocaine in situations unrelated to this case. Given these circumstances, evidence related to Minnick's malfeasance does not "render the witness'[s] testimony totally incredible," or indicate that a "key witness was untruthful in closely related matters." *Quiles*, 618 F.3d at 391-92. For reasons discussed more fully below, there a no "exculpatory connection between the newly discovered evidence and the facts that were presented at trial [n]or d[oes] the newly discovered evidence strongly demonstrate that critical evidence at the trial against the defendant was very likely to have been false." *Id.* at 392-93.

The Court also agrees that the newly discovered evidence is immaterial and would not produce an acquittal. (*See* Doc. 169 at 9.) On November 29, 2023, a jury convicted Defendant of the five counts of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a) charged in the November 9, 2021, Indictment (Doc. 1). (Doc. 107.)  At the close of

the case, the Court explained to the jury the elements of the crimes charged, stating at the

outset that "[i]n order to find Mr. Watson Guilty of the crimes charged, the Government must

prove beyond a reasonable doubt each of . . . the elements as to each count." (November

29, 2023, Trial Transcript ("T. Tr. 2") 93:1-4, Doc. 132.) The Court then provided the

following instructions:

> First: That at the time alleged, Victim 1 was under 18 years old;
>
> Second: That the defendant, John Vincent Watson, knowingly employed, used, persuaded, induced, enticed, or coerced Victim 1 to engage in sexually explicit conduct;
>
> Third: That Mr. Watson acted with the purpose of producing a visual depiction of sexually explicit conduct; and
>
> Fourth: That the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including for computer or cellular phone.
>
> Now I will give you more detailed instructions on some of the terms used.
>
> Regarding the first element, the Government is not required to prove that the defendant knew that the person depicted was under the age of eighteen.
>
> Mistake of age is not a defense and knowledge of the victim's age on the part of the defendant is not required for you to find John Watson guilty.
>
> Regarding the second element, a person is "used" if the person is photographed or videotaped.
>
> Regarding the second and third elements, the term "sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, whether between persons of the

same or opposite sex; or lascivious exhibition of the anus, genitals, or pubic area of any person.

"Lascivious exhibition" is determined by considering the following factors:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

At least two of these factors must be present, but not all of them need be. All these questions are objective. It does not matter whether the defendant subjectively intended the conduct or depiction to be "sexually explicit" or "lascivious"—he need not have appreciated the sexual character of the conduct or the legal consequences.

In the third element, the term "producing" means producing, directing, manufacturing, issuing, publishing, or advertising. It is not necessary that the Government prove that the defendant took the picture or videos.

The term "visual depiction" includes undeveloped film and video-tape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

In the fourth element, the term "in interstate commerce" means the visual depiction, production or transmission materials crossed a state line. It is

not necessary that the Government prove that the defendant knew of the interstate or foreign nature of the materials used to produce the visual depictions.

(T. Tr. 2 93:5-95:18.)

The trial transcripts clearly establish that Minnick's testimony was not material to the jury's finding that the Government had established each element of the offenses charged beyond a reasonable doubt. As to the first element regarding the victim's age, the victim's mother identified her daughter in the videos and photos found on Defendant's phone and testified that her daughter was 14 when these images were generated in October 2021. (T. Tr. 1 95:1-101:22.) As to the second and third elements, Defendant identified the cell phone from which the images at issue were downloaded to be his cell phone (T. Tr. 2 52:14-16); Defendant stated that the man in the videos at issue "definitely looks like me" (T. Tr. 2 53:25); Defendant agreed that he had sex with the fourteen-year-old victim (T. Tr. 2 54:12-18; 56:1), claiming that he "never enticed or coerced [her] to do anything she did not want to do" (T. Tr. 2 55:11-12); and Defendant agreed that he videotaped having sex with the victim (T. Tr. 2 54:21-23). Finally, as to the fourth element, Corporal Christopher Hill of the Pennsylvania State Police Computer Crime Unit testified that Defendant's cell phone was manufactured overseas. (T. Tr. 1 142:9-11, 162:1-163:25.)

This brief summary of relevant testimony clearly shows that Minnick's testimony was not material to the jury's finding of guilt on all counts. Thus, the Court agrees that "[t]he ability to impeach Detective Minnick with evidence that he stole drug evidence in other

11

unrelated cases is simply not material to the issues in this case and would not probably produce an acquittal" (Doc. 169 at 11). With this determination, Defendant cannot meet at least two of the five requirements needed to establish entitlement to a new trial based on newly discovered evidence, i.e., the requirements that the new evidence "must be material to the issues involved . . . and . . . of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal," *Iannelli*, 528 F.2d at 1292. Therefore, Defendant would not be able to establish entitlement to a new trial pursuant to Rule 33.

This finding also forecloses Defendant's *Brady* argument. Defendant states that the newly discovered evidence "may illuminate a violation of the Defendant's constitutional rights under *Brady v. Maryland*." (Doc. 163 ¶ 1; *see also* Doc. 164 at 5.) However, for the reasons discussed above, the *Brady* requirement that the evidence be "material to guilt or punishment," *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005), cannot be satisfied here.

Because Defendant cannot show entitlement to a new trial, a determination based on the thorough development of relevant questions in the record reviewed by the undersigned who presided over the trial, *see Herman*, 614 F.2d at 372, Defendant's request for a hearing is properly denied.[1]

---

[1] Defendant filed a reply brief on February 5, 2025. The Court's January 15, 2025, Order directed that "Defendant may file a reply brief no later than **January 31, 2025**." (Doc. 168 ¶ 2.) Defendant did not file a motion to extend that deadline or a motion to file a reply brief *nunc pro tunc*. Therefore, the reply brief is an improper filing which is not addressed in the Court's analysis of the Motion for Hearing/New Trial Under

## V. CONCLUSION

For the reasons set out above, the Court will deny Defendant John Vincent Watson's Motion for Hearing/New Trial Under Federal Rule of Criminal Procedure 33 (Doc. 163). A separate Order will enter.

Robert D. Mariani
United States District Judge

---

Federal Rule of Criminal Procedure 33 (Doc. 163). However, the Court notes that Defendant's brief incorrectly states that it is "other jurisdictions" which indicate that a hearing is only required in "exceptional circumstances (*see* Doc. 170 at 2). As set out in the text, *see supra* p. 5, the Third Circuit's decision in *United States v. Bergrin*, Civ. No. 20-2828, 2022 WL 1024624, at *7 (3d Cir. Apr. 6, 2022), approvingly quoted *United States v. Glinn*, 965 F.3d 940, 942 (8th Cir. 2020), and, in fact decided that a hearing was not necessary because there were "no exceptional circumstances in this case mandating an evidentiary hearing. 2022 WL 1024624, at *7. Defendant also grossly mischaracterizes Minnick's activities in this case which he identifies as "the possession and processing of evidence" (Doc. 170 at 2) when, in fact, trial testimony clearly indicates Minnick's role was limited to logging the phone and hard drive into evidence and Detective Daniel Lewis at all times physically maintained custody of that evidence. *See supra* p. 8. Finally, with Defendant's recognition of the difficulty in obtaining evidence related to Minnick's criminal case (*see* Doc 170 at 2-3), he essentially argues that this case should be stayed pending the availability of such evidence which realistically would be at the conclusion of the pending state criminal proceedings. Such a stay is clearly unwarranted given the abundance of evidence, including Defendant's admission of guilt during his trial testimony. *See supra* p. 11.